Mayor, &c., of N. Y. City agt. N. Y. and Staten Island Ferry Co.

## NEW YORK SUPERIOR COURT.

THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK agt. THE NEW YORK AND STATEN ISLAND FERRY COMPANY and another.

*Power to grant ferry franchises.*

The city of New York has power under its charter to establish ferries around New York. This power is absolute, conclusive and exclusive, as well as to rights of property as a naked power, subject only to the right of the sovereign power (the state) to take it away for public purposes, and upon full compensation.

The policy of the law and its known prohibitions prevents any person from running a ferry from Manhattan Island to the opposite shores without a license or grant from the corporate authority.

The defendant the Staten Island Ferry Company, a private corporation, through a lease from the North Shore Staten Island Ferry Company, established a ferry from the foot of Whitehall street to the east shore of Staten Island; *held*, that through its incorporation, or with a lease from the other company, it had no such right, even with the consent of the department of docks.

The plaintiffs' right being exclusive, and clearly established by charters and statutes, there is no necessity to have it established by an action at law.

An injunction for their protection until the hearing granted.

*Special Term, June*, 1875.

MOTION for injunction.

*Geo. P. Andrews*, assistant corporation counsel; *Hon. Henry E. Davies, Julien T. Davies*, of counsel, for corporation of New York.

*Sidney S. Harris* for defendants.

VAN VORST, *J.* — The learned counsel for the defendants urges that the right to establish ferries is a sovereign power, and that the legislature has the right to take away or impair a franchise granted by it.

No such right to recall can with any reason or justice be urged with regard to the ferries in existence when the grant from the sovereign power was originally made, and which were clearly recognized and confirmed, with their issues and profits, in the corporation of the city of New York in perpetuity. The question is now only considered, and the right to recall or revoke applied, with respect to ferries to be established after the grant.

It is claimed by the defendants' counsel that whatever was granted by the Montgomerie charter in 1730, and the Eastin charters, known as the Dongan and Cornbury, and confirmed by the state afterward, in regard to the right to set up and establish future ferries by the corporation of the city of New York, is a political power only, unaccompanied by any interest, and may be recalled at any time by the sovereign authority before the power has been actually executed.

This view is sustained by the opinion of judge HOGEBOOM, at special term, in *The People* agt. *The Mayor, &c., of New York* (32 *Barb.*, 102).

That learned judge, in the course of his opinion, notices a distinction between a grant of actual property and a right to create property — between a conveyance of an existing ferry and a grant of a power to establish future ferries. He says: "The one conveys property, and with it all the ordinary rights which attach to the ownership and possession of property; the other is a mere naked power, not coupled with an interest nor conferring an interest." The judge concedes that "powers coupled with an interest — powers conferring rights of property — are incapable of recall."

He, however, says, in short, that the power granted to the city of New York by the Montgomerie charter to establish

future ferries is a mere power conferred upon the city and not a right of property.

As the judge, however, finally held that the act of 1845, under consideration before him, which created commissioners to lease and dispose of the ferries, and which was claimed to be in violation of the rights of the city of New York, was repealed by the charter of 1857, it may well be that what was said in respect to the rights of property in future ferries, was not necessary for the decision. He refused to grant an injunction to restrain the defendants from granting leases for Hamilton avenue and Wall street ferries.

Yet the opinion of judge HOGEBOOM, in its entire scope, may not be considered foreign to the subject then and now under consideration, and proceeding from a judge so learned, able and judicious, is entitled to very great consideration.

In *Bronson* agt. *The Mayor of New York* (10 *Barb.*, 233), the subject was again under consideration, both as to existing and future ferries. But in the end, BARCULO, judge, said, "the question of the right to establish future ferries is not passed upon."

On the other hand, chancellor KENT, in his notes on the chartered rights of the city of New York, found at length in *Davies' Laws of New York* (*page* 214, *in note* 30, *page* 226), in speaking of the Montgomerie charter, says: "The grant of a right to establish other ferries, and appropriate their profits, was said to be a grant of a sovereign legislative power and of a public legislative character, and liable to be recalled at the pleasure of the legislature. I do not perceive that there is any solid ground for such a distinction on this point between the grant of the old ferry, with its rents and profits, and the grant of the right to establish other ferries when needed, with their rents and profits. They are equally grants of corporate franchises, partaking of the nature of private property. They are made in the same terms and in the same connection with the grant of lands. They confer on the inhabitants of New York vested and valuable interests,

arising from the rents and profits of every ferry established or to be established under the charter. The grant was founded on a two-fold consideration, as a source of revenue to the city and an accommodation to the public."

This distinguished legal commentator understood the use of words and their import, and his long experience on the bench made him conversant with their meaning as conferring both powers and rights of property. In the connection in which he wrote, he spoke independently and judicially, seeking fairly and impartially to interpret the charter in question as he would any statute of local or general interest. The result to which he arrived, as the text shows, was after a consideration of both sides of the controversy. And judge MURRAY HOFFMAN, in his treatise on "the estate and right of the city of New York," 1862, after a full examination and consideration of the whole subject, reached the same conclusion. He shows that the power of the city of New York, under its charters, in the future to establish ferries around New York is absolute, conclusive and exclusive; that the grant to this municipal corporation of this right is as much a grant of property as a patent for a tract of land, and is to be dealt with as private property, subject only to the right of the sovereign power to take it away for public purposes, and upon full compensation.

The same view was taken by judge ROOSEVELT in a case before him, in the supreme court, referred by judge HOFFMAN in his treatise (*Hoffman's Treat.*, *pp.* 273–302; *Davies' Laws of N. Y.*, 1254, *note V.; Gerrard's City Water Rights*, 287).

I concur in these conclusions, and yet they involve no dissent from the proposition that the state cannot irrevocably part with political power. It may at pleasure, and for the general good, revoke and annul such grants, and resume the power. But even the state cannot, without just compensation, disturb or annul its grants by which rights of property have become vested in its grantees. Although this subject

has been elaborately discussed by the counsel on both sides, it has after all no conclusive bearing upon the subject now under consideration. The state has never attempted, except through the act of 1845, to interfere in any manner with the rights of the city of New York over ferries.

That act, by the decision of judge ROOSEVELT, was pronounced unconstitutional, and by judge HOGEBOOM to be repealed.

The city has now, through its duly constituted authorities, and may exercise the same powers it ever could.

The city has the exclusive right under the law to set up and establish ferries, and grant ferry franchises, and to the rents and profits of the same. The policy of the law, and its known prohibitions, prevents any person from running a ferry from " Manhattan Island " to the opposite shores without a license or grant from the corporate authority.

The defendant The Staten Island Ferry Company, a private corporation, has established and is running a ferry from the foot of Whitehall street to the east shore of Staten Island. Through its incorporation it has no such right.

Its only right and authority for this act, as the case shows, is derived from its lease from the North Shore Staten Island Ferry Company, of a portion of its premises at the foot of Whitehall street, which premises, by the terms of the subletting, are to be used conjointly with its immediate landlord, for ferry purposes.

The North Shore Staten Island Ferry Company have no power to give a license to any person or persons to establish or run a new ferry.

It is true the subletting of the premises to the New York and Staten Island Ferry Company, was consented to by the department of docks ; but the department of docks have not licensed this ferry.

The power to establish ferries does not rest with the department of docks. It does not issue licenses or make grants for such purposes.

This department has exclusive charge and control, subject to the particulars mentioned in respect of the commissioners of the sinking fund, of all wharf property, including wharves, piers, bulkheads and structures thereon and waters adjacent thereto, and with their appurtenances, and may doubtless determine the uses to which the wharves and piers shall be appropriated (*Chap* 574, *Laws of* 1871, 1235).

It is needless to determine in detail all the powers of the dock department. They are large and important, and closely connected with the commercial interests of the city, and involve large responsibility. They may appropriate and assign the property under their charge, by districts, to special kinds of commerce.

But it is apprehended that these powers, comprehensive as they are, do not embrace the granting of ferry franchises.

The power to determine the necessity for future ferries and the disposition of the franchises and grants therefor belong to other branches of the municipal government.

The ferry franchise is a valuable property, and the corporation of the city of New York is entitled to the rents and profits of same. They can no more be appropriated by any other individual or corporation to his or its use, without authority, than any other property of the city.

The defendant The New York and Staten Island Ferry Company is practically enjoying this privilege without any return therefor, other than it pays its immediate landlord for the use of its premises at the foot of Whitehall street, where it receives and lands its passengers and property.

This is not just in itself, and is wrong to others who acknowledge the claims of the city of New York and pay a stated rent or other return for the franchises they enjoy.

I would put no cumbersome restraints upon commerce, nor hamper its operations by unjust exactions and demands. On the other hand, I would generally encourage all efforts for its healthy growth and extension. The prosperity of the city is closely allied with the success of its commerce.

But the enforcement of the law on this subject if done wisely, impartially and liberally, cannot be otherwise than advantageous to all concerned, and by the exercise of judicious oversight it will secure safety to property and passengers.

The only remaining question is whether the remedy by injunction, which is now invoked by the plaintiff, is appropriate. I am of the opinion that the remedy exists. As before stated, there are prohibitions against the exercise of this franchise to the injury of the plaintiff; and even though there were no positive prohibition, there is a negative obligation upon other persons to forbear from disturbing the owner's enjoyment of a franchise.

The plaintiffs' right is exclusive and is clearly established by charters and statutes. There is, therefore, no occasion to have the plaintiffs' right established by an action at law.

In *High on Injunctions* (*sec.* 570), it is said "the value of a franchise, being generally dependent upon its exclusive use and possession, it may be protected upon the ground of the inadequacy of the legal remedy, and the probability of there avoiding a multiplicity of suits" (*Secs.* 571 *and* 572; *Newburgh, &c.,* agt. *Miller,* 5 *John. Ch.,* 101).

In the proceeding before judge ROOSEVELT, before alluded to, he allowed an injunction.

The injunction asked for is granted, and the injunction already issued is continued until the hearing.